**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. CR-17-220-HE |
| ) | |
| BRENNA KAY UNDERHILL, ) | |
| ) | |
| *Defendant.* ) | |

**DEFENDANT BRENNA KAY UNDERHILL'S SENTENCING MEMORANDUM**

Pursuant to Tit. 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220, 221 (2005), Defendant Brenna Kay Underhill, by and through her attorney of record, Adam R. Banner, submits this sentencing memorandum to assert that she is entitled to a two (2) level reduction in offense level in regards to USSG § 3B1.3; and assist the Court in understanding more about Ms. Underhill's background and individual characteristics to further determine what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives of Tit. 18 U.S.C. § 3553(a). Ms. Underhill will first address her objections to the Presentence Investigation Report ("PSR") and then discuss the legal framework and statutory factors in support of the contention that a sentence of five (5) years' probation is sufficient, but not greater than necessary, to achieve the goals of Tit. 18 U.S.C. § 3553(a).

**I.    PSR Objections/Sentencing Guidelines Calculation**

In this section, Ms. Underhill will address all of her objections to the Final Presentence Investigation Report submitted in this matter (the " PSR").

### A. Objections Not Affecting the Guideline Calculation

Ms. Underhill made various objections to the PSR that address underlying facts of the case and her background but do not affect the PSR's guideline calculation. US Probation has responded to these objections by adding or correcting the information in the respective paragraph, thus requiring no further discussion.

### B. Objections to the PSR that Affect the Guidelines

Counsel has objected to the application of certain enhancements that affect the guideline calculations in the PSR. *See* PSR, Addendum, pp 23-24. Some of these objections were lodged for purposes of preservation so that counsel could further investigate and research whether they are appropriate in this matter. After extensive research, counsel for Ms. Underhill now withdraws the objection to the application of "sophisticated means" under USSG § 2B1(b)(10)(C) (PSR, ¶31). The remaining objection that affects the guideline calculation is USSG § 3B1.3 (PSR, ¶33), which will be discussed below.

#### 1. Abuse of Position of Public or Private Trust: USSG § 3B1.3

Paragraph 33 of the PSR seeks a two (2) level enhancement under § 3B1.3 because Ms. Underhill "abused a position of trust." PSR, ¶ 33. According to the PSR, this enhancement should be applied to Ms. Underhill because (1) she worked as a payroll administrator with little oversight, and (2) she misappropriated corporate funds by creating timesheets with fraudulent overtime hours and transferred the difference to her personal account. *Id.* Although Ms. Underhill does not contest the factual allegations asserted in this paragraph of the PSR, she asserts that the enhancement for abusing a position of trust is not applicable to her case based on those facts.

"[T]he lack of any *authority* to make substantial discretionary judgments is key in determining whether the enhancement applies" for abusing a position of trust. *United States v. Spear*, 491 F.3d 1150, 1154 (10th Cir. 2007) (citation omitted). The Tenth Circuit has emphasized that occupying a position with "significant responsibility is not determinative." *Id*. Moreover, authority necessary to qualify for the enhancement exists where the person had the discretion and authority to make broad case-by-case decisions for the organization. *Id.* at 1155 (citing *United States v. Edwards,* 325 F.3d 1188 (10th Cir. 2003)). This discretion requires more than engaging in mere ministerial tasks directed by standardized office protocols. *Id*. The Tenth Circuit noted in *Spears* that the commentary of USSG 3B1.3 cmt. N. 1 goes on to illustrate the scope of the enhancement as applied to professionals like lawyers or doctors, but not to bank tellers or hotel clerks. *Id*. at 1154.

Enhancement for abusing a position of trust is not applicable in all cases involving the misappropriation of funds. The Tenth Circuit reversed and remanded a case involving embezzlement of Federal money. *Spear*, 491 F.3d 1150, 1159. In *Spear*, the defendant was a federal immigration employee who took money from immigration status applications, deposited the money into her personal account, and threw away the applications. *Id*. at 1157. The government applied a two (2) level enhancement for abusing a position of trust, but the Tenth Circuit held that Spear's duties lacked substantial discretionary authority, and thus were not subject to the abuse of trust enhancement. *Id*. at 1156. The court explained that Spear's duties of processing new application, putting them in a pipeline for substantive review, taking the money, and answering questions from the public did not rise to the level of managerial authority to qualify as a position of trust. *Id*. "Spear's theft was simply accomplished by being in the right

place at the right time, i.e., *opportunity* and *access*, and not by exercising authority to stave off inquiry or decision-making power to cover her tracks." *Id*.

The Tenth Circuit's decision in *Spear* was guided by *United States v. Edwards*, a case also involving embezzlement. In *Edwards*, the Tenth Circuit court concluded that even though defendant was trusted by her employer with significant responsibilities, it was not determinative of the enhancement for "abusing a position of trust." *Edwards*, 325 F.3d 1184, 1187. *Edwards* held that opportunity and access do not equate to authority, or to the kind of "substantial discretionary judgment" required for the § 3B1.3 enhancements. *Id*. In that case, Ms. Edwards' duties included:

1. handling bank accounts receivables;
2. preparing accounts for deposit;
3. posting the payments to customer accounts and the cash receipts journal;
4. sending out bills;
5. calculating customer account balances;
6. compiling and forwarding to sales personnel and her supervisors reports reflecting such data; and
7. posting credits to customer accounts.

*Id.* at 1185-86. Ms. Edwards embezzled over $31,000 by failing to post certain customer payments, and re-routing approximately fifty-nine checks reflecting those payments to her boyfriend's account, which she had access to. *Id*. The Tenth Circuit never-the-less vacated and remanded the two (2) level enhancement for abusing a position of trust, because Ms. Edwards "did not have the discretionary authority to grant credits to customers, or any other authority to make substantial discretionary judgments regarding company revenues or expenses." *Id*. at 1187. Her position was "indeed clerical and ministerial." *Id*. The Tenth Circuit emphasized that "the question of whether an employee occupied a position of trust within the meaning of § 3B1.3 is a heavily fact-specific determination to be made by the district court using the guideline and other

factors" that the Tenth Circuit has recognized. *Id.*; *See*, e.g., *United States v. Haber*, 251 F.3d 881, 890-91 (10th Cir. 2001).

It would be reversible error to apply the two (2) level enhancement for abusing a position of trust under § 3B1.3 to Ms. Underhill. There is no evidence that Ms. Underhill had the discretionary authority to make substantial case-by-case decisions for the organization. Paragraph 33 is a 4-sentence paragraph that briefly describes Ms. Underhill as being "employed as payroll administrator, with little oversight, which facilitated her ability to manipulate payroll data." PSR, ¶ 33. This alone is not determinative of the enhancement. Ms. Underhill more or less simply worked in a data-entry position.

Like Spear and Ms. Edwards, Ms. Underhill simply had access and opportunity, but lacked the authority prerequisite to qualify as a position of trust. Although paragraph 1 of the PSR gives additional background facts, it lacks the details necessary to determine whether Ms. Underhill had discretionary authority to make significant decisions for the organization. PSR, ¶ 1. Mr. Underhill, like *Edwards*, had access to handle company accounts, process employee's timesheets, and transfer money to her personal account. Consequently, because Ms. Underhill's responsibilities included carrying out clerical and ministerial duties directed by standardized office protocols, she did not occupy a position of trust to warrant the two (2) level enhancement under § 3B1.3. Therefore, the enhancement for abusing a position of trust does not apply to Ms. Underhill.

Paragraph 35 of the PSR calculates Ms. Underhill's Adjusted Offense Level (Subtotal) at 19. For the aforementioned reasons warranting a decrease by two (2) levels for the misapplication of the abuse of position of trust enhancement, the new Adjusted Offense Level (Subtotal) should be 17. Therefore, after applying the two (2) level reduction for Acceptance of

Responsibility, and the one (1) level reduction for Acceptance of Responsibility—assisting authorities in the investigation—the new Total Offense Level in Paragraph 39 should be 14. Consequently, Ms. Underhill's guideline imprisonment range should be 15 months to 21 months.

## II.     Legal Framework

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing requires a two-step process. *See United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008). First, the district court must consult the United States Sentencing Guidelines (the "Guidelines") and correctly calculate the range they provide. *Id.* The district court must next consider the factors mentioned in section 3553(a) to determine a reasonable sentence. *Id.* Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In *Vazquez v. United States*, 130 S.Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of the Solicitor General's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. At 11, *Vasquez v. United States*, No. 09-5370 (Nov. 2009).

## III.    A Sentence of Five Years' Probation Will Satisfy the Goals of Tit. 18 U.S.C. 3553(a)

The sentence sought herein satisfies the goals of § 3553(a), despite representing a downward variance from the guidelines calculated by the PSR—and as previously argued above—based on the applicable statutory provisions.

### A. The History and Characteristics of Ms. Underhill: Tit. 18 U.S.C. § 3553(a)(1)

Ms. Underhill, like many other offenders, experienced abusive behavior during her childhood. At age 10, she witnessed her father physically abuse her mother by hitting her,

kicking her, throwing things at her, and dragging her around the house. PSR, ¶ 57. To escape this daily abusive behavior, Ms. Underhill moved in with her grandparents while in 4th grade. *Id*. During her time with her grandparents, she also had to take care of her grandfather who had diabetes. PSR, ¶ 51. Later, Ms. Underhill's moved once again, this time to live with her aunt. *See* PSR, ¶ 59. Her grandparents and aunt took responsibility of Ms. Underhill and her siblings. *Id*.

Ms. Underhill "did not have a lot" growing up, and if it had not been for her grandparents and aunt, it would have been much worse. PSR, ¶ 57. The instability of her childhood took a mental toll on Ms. Underhill, causing her to suffer from anxiety and depression. PSR, ¶¶ 60, 64. To this day, Ms. Underhill is not close to her parents and has kept her children away in fear of potential abuse. PSR ¶ 61.

Despite her volatile childhood, Ms. Underhill obtained a higher education to better provide for her family. After graduating from Texhoma High School in 1992, Ms. Underhill received her Business Administration Bachelor's Degree in 2011 from Oklahoma Panhandle State University. PSR, ¶¶ 70-71. She was married and had children; however, about four years ago, Ms. Underhill divorced her husband of fourteen-plus years, and now both share custody of their two children: her twelve-year-old daughter and her six-year-old son. PSR, ¶ 53.

According to Ms. Underhill's own words in her voluntary presentence questionnaire: "I went thru [sic] a divorce after 15 years of marriage and I kind of just panicked about how I was going to provide for my children. My husband left for another woman that he had been seeing that I knew nothing about." PSR, ¶ 56. Ms. Underhill began to struggle financially after the divorce, going from a two-income household to a one-income household, while still trying to provide for her children. *Id*. She provided for her children's health, dental, and vision insurance.

Additionally, her daughter plays soccer, and she paid for all of those expenses, as well as all other school-related activities. *See* PSR, ¶ 56.

The financial and mental pressures of her divorce, rough childhood, and distant family ties lead to Ms. Underhill's anxiety and depression diagnosis. Pretrial supervision records reflect that, on October 17, 2017, she was referred to Cornerstone Counseling Mental Health in Oklahoma City, Oklahoma for a mental health assessment, where she was later recommended to participate in individual counseling for her anxiety and depression. PSR, ¶¶ 65-67. Ms. Underhill has followed the recommended treatment to show her commitment to becoming a better, healthier person, not only for herself, but for her children.

Ms. Underhill has no criminal record of serious or heinous crimes. Like many young adults, she received a citation for speeding and driving with a suspended license when she was 20 years old. PSR, ¶ 41. Although she was also charged with writing a $70.00 check with insufficient funds during that same year, the case was dismissed. PSR, ¶ 44. For the last 23 years, Ms. Underhill has not committed any crimes, aside from the current case, and has no other pending charges. PSR, ¶ 45. Additionally, she has no substance abuse problems of any kind. PSR, ¶ 68. Moreover, she is also subjected to random drug screenings as part of her current employment. PRS, ¶ 69.

Ms. Underhill's primary focus is being a better mother and role model for her underaged children. She understands the gravity of the charges. *See* PSR ¶ 56. She has done everything in her power to improve herself; she has cooperated with law enforcement in this case and continues to participate in individual counseling for her anxiety and depression. Ms. Underhill has accepted responsibility for her actions and is determined to pay restitution to make the victims in this case whole again.

Importantly, despite the seriousness of the offense, U.S. Probation recognizes that a departure "outside of the advisory guideline range in consideration of the 18 U.S.C. § 3553(a) factors may be appropriate in this case, particularly as it relates to the history and characteristics" of Ms. Underhill, in part due to her mental health, her minor children, and the fact that she has no significant criminal history. PSR, ¶ 109. Because the United States Sentencing Guidelines are advisory only, this Court has full discretion to deviate as such and grant probation.

**B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives: Tit. 18 U.S.C. § 3553(a)(2)**

**1. A sentence of five (5) years' probation and restitution in the amount of $69,428.41 would reflect the seriousness of the offense and provide just punishment for the offense.**

The sentence of five (5) years' probation requested herein is a significant punishment in light of all relevant circumstances. It would give Ms. Underhill many restrictions on her personal freedom and liberties, and in turn force her to continue to be accountable for the criminal activity which lead to the current conviction and further deter her from breaking any law in the future. Ms. Underhill is fully aware that, if this Court sees it fit to grant her requested sentence, any violation of the terms and conditions of her probation would most certainly result in federal incarceration.

Moreover, both parties have stipulated that, pursuant to 18 U.S.C. § 3663(A), restitution in the total amount of $69,428.41 should be ordered in this case. Because Ms. Underhill will have to disclose past criminal charges to potential employers, Ms. Underhill will likely never occupy a position relating to finance and/or money again. This restriction alone will ensure that she will not re-offend. A sentence of five (5) years' probation would also be a just punishment in light of the fact that Ms. Underhill has no serious criminal history, has never been incarcerated, has no substance abuse problems, and has kept a clean record for the last 23 years.

### 2. A sentence of probation will afford adequate deterrence to Ms. Underhill.

Ms. Underhill understands and acknowledges that probation would be a gift from the grace of this Court. She has had trouble explaining these charges to her children. PSR, ¶ 53. The current situation she finds herself in has no doubt forced her to reevaluate her decisions and the compulsive behavior that led to this mistake in judgement and character. She would not risk jeopardizing her family again.

Moreover, research has revealed that, while the finality of being caught and punished has a deterrent effect of its own, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) (noting "Three National Academy of Science Panels…reached that conclusion, as has every major survey of the evidence."). Further research has reached the same conclusion with respect to white-collar defendants as well. *See* David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in the deterrent effect of probation and that of imprisonment).

### 3. The public will be protected while Ms. Underhill is on probation.

#### a. *Ms. Underhill is not a threat to the public.*

Ms. Underhill does not pose a threat to the public. She understands now, perhaps more than ever, that she has supportive, law-abiding family members that she needs to stay close to for emotional support. She has never been accused of a violent crime, and she has no substance abuse issues. Although she understands that she caused great harm to the victim—even though this crime was not violent—her life story, as laid out in the PSR, also shows that her conduct in this case is a significant deviation from the rest of her life. Furthermore, she possesses the tools

and the support system to lead a lawful and gainful life if allowed probation. It is important to note that her current job does not include access to any payroll databases. *See* PSR, ¶ 74.

### b. Ms. Underhill is highly unlikely to reoffend.

Research has shown that defendants who share the same characteristics and criminal conduct with Ms. Underhill are statistically unlikely to reoffend. Studies have shown that women reoffend at a lower rate than men. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 11 & Exhibit 9 (2004). Moreover, USSC studies have further shown that defendants who are, or were ever, married are also statistically less likely to reoffend. *Id*. at 11 & Exhibit 10. Additionally, stable employment in the year prior to arrest is also associated with a lower risk of recidivism. *Id*. at 12 & Exhibit 10. The same study found that Category I defendants convicted of fraud actually have the lowest recidivism rate of any offense category (9.3%). *See Measuring Recidivism*, *supra*, Exhibit 11, at 30.

### 4. A sentence of probation will avoid unwarranted sentence disparities.

Although a sentence of five years' probation would represent a downward variance, it would also avoid unwarranted sentence disparities for defendants with similar records who have been found guilty of similar conduct. In a case involving conspiracy to commit mail fraud with a total loss of $1,191,382.00, the Northern District of Oklahoma ordered defendants to pay $175,000 in restitution and imposed five years' probation. *United States v. Brewer*, 983 F.2d 181, 183 (10th Cir. 1993). The Tenth Circuit affirmed the judgment. *Id*. at 186. Here, the total loss is overwhelmingly below the loss in *Brewer*, and Ms. Underhill has agreed to pay the stipulated restitution. She has already paid $2,500.00 at the time of her plea. *See* PSR, ¶ 23. Furthermore, she also plans to make additional payments towards restitution at the time of her sentencing once restitution is ordered by this Court.

**5. A probation sentence will allow Ms. Underhill to continue paying the stipulated restitution.**

Both parties in this case have agreed that Ms. Underhill is responsible for paying $69,428.41 to Federal Insurance Company, and a probation sentence will give Ms. Underhill the best opportunity to do so. In the interest of justice, a probation sentence would advance the restitution condition of Ms. Underhill's conviction. Furthermore, Ms. Underhill has continually delivered restitution payments to defense counsel, which counsel currently has in his IOLTA Trust Account. *See* PSR, ¶ 56. As of the filing of this Sentencing Memorandum, Ms. Underhill has an additional $2,750.00 in counsel's IOLTA Trust Account ready to pay towards restitution for the victim. The amount may well be more than that at the time of sentencing.

Importantly, Ms. Underhill is currently still employed, even though "she has now notified her employer of all aspects of this offense, and it is her understanding that U.S. Probation has called to verify such." PRS, ¶ 74a. If her current employer is already aware of the fact that she has been found guilty of a federal felony offense, and she is still employed, there is every reason to believe she will keep that employment if granted five years of probation. In fact, "[p]retrial supervision records reflect that contact was made with this employer and this employer reported that [Ms. Underhill] did not have access to any payroll database; therefore, this employer did not appear to have an issue with [Ms. Underhill's] employment." PSR, ¶ 74. If given probation, Ms. Underhill will keep her employment, making it much easier to expedite the payment of restitution ordered by this Court.

**6. A probation sentence will allow Ms. Underhill to continue her current treatment.**

Courts have recognized that a sentence of imprisonment for defendants can be counterproductive for treatment purposes, and instead, have imposed probation sentences with health treatment requirements. *See United States v. Small*, 118 Fed. Appx. 415, 416 (10th Cir.

2004) (the United States District Court for the District of Colorado placed defendant on probation and required defendant to be subjected to drugs testing and assessment for his mental condition); *See also United States v. Wyrick*, 416 Fed. Appx. 786, 794 (10th Cir. 2011) (holding that it is inappropriate to impose a sentence of a term of imprisonment solely for rehabilitative purposes or correctional treatment; instead the court granted probation and placed a health treatment requirement). By granting a sentence of five years' probation, this Court will avail Ms. Underhill to continue her current treatment for anxiety and depression. In her voluntary supplemental presentence questionnaire, Ms. Underhill furthered this fact by stating "[she is] more than happy to participate in and complete any programs or treatment the court deems necessary." PSR, ¶ 73.

### C. The Kinds of Sentences Available: Tit. 18 U.S.C. 3553(a)(3)

The statutory maximum term of imprisonment for this type of crime is no more than twenty (20) years. 18 U.S.C. § 1343. Ms. Underhill asserts that the 2-level enhancement for abusing a position of trust is not applicable to her case. Consequently, based upon a Total Offense Level of 14 and a criminal category of I, the guideline imprisonment range is 15 months to 21 months.

Although Ms. Underhill is in Zone D of the Sentencing Table by only one (1) offense level—if this Court accepts counsel's argument—since *Booker*, *supra*, the Zone D prohibition on probation is only advisory. Moreover, the Guidelines themselves acknowledge that "[p]robation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for the law, providing just punishment for the offense, achieving general

deterrence, and protecting the public from further crimes by defendant." USSG, Ch. 5, Part B, introductory comment.

The only statutory limitations on alternative sentences are for defendants convicted of Class A or Class B felonies, those convicted under a statute that specifically prohibits probation, or those sentenced to prison to a non-petty offense at the time. Tit. 18 U.S.C. §§ 3559(a) and 3561(a). Since Ms. Underhill's crime does not fall into any of these three categories, nothing prohibits this Court from imposing an alternative to imprisonment for a Defendant who is in Zone D. As such, Ms. Underhill respectfully asks this Court to grant her request for a sentence of five (5) years' probation, to pay the agreed upon restitution, and continue receiving her health treatment.

## CONCLUSION

The Legislature intended the Guidelines to be advisory and give courts latitude in setting sentences appropriate for each specific case. As such, courts are not bound by the Guidelines. Ms. Underhill accepts complete responsibility for her actions, and her cooperation with authorities is an indication of her desire to better herself. While she undoubtedly recognizes the seriousness of the offense and the need for punishment, Ms. Underhill submits that the sentence of five (5) years' probation recommended herein is appropriate under the circumstances.

Respectfully submitted,

/s/ Adam R. Banner
Adam R. Banner, OBA #30480
Phillips, Coventon, Quillian, & Banner, PLLC
1900 Northwest Expressway, Suite 601
Oklahoma City, Oklahoma 73118
Phone:  405-418-888
Fax: 405-260-9573
Email: adamrbanner@gmail.com
***Attorney for Brenna Underhill***

**CERTIFICATE OF SERVICE**

  X   I hereby certify that on the 26th day of January, 2018, a copy of the attached document was electronically transmitted to all ECF registrants in the above-referenced matter, namely:

Chris M. Stephens, Esq., Assistant United States Attorney

                                              /s/Adam R. Banner
                                              Adam R. Banner